IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WILLIAM T. SIMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:18-cv-00551 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| MELVIN DAVIS, SOPHIA | ) | United States District Judge |
| MASSENBURG, and DR. LAURENCE | ) | |
| WANG, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

William T. Sims, a Virginia inmate proceeding pro se, filed this civil action alleging

violations of his rights under the First, Eighth, and Fourteenth Amendments.  Sims alleges that

Melvin Davis, the warden at Green Rock Correctional Center, is responsible for Sims' fall and

injury in a segregation cell on December 5, 2016.  Sims also alleges that Sophia Massenburg, the

grievance coordinator at Green Rock, did not process Sims' grievances on the issue, and that Dr.

Laurence Wang was deliberately indifferent to Sims' medical needs that arose due to the fall.

Defendants move for summary judgment.  (Dkt. Nos. 17, 25.)  For the reasons stated below,

defendants' motions will be granted.

### I.  BACKGROUND

**A.  Sims' Fall in Segregation**

On December 5, 2016, Sims was placed in a segregation unit at Green Rock because he

went on a hunger strike.  Sims is a wheelchair bound inmate due to an above the knee

amputation.  Sims' segregation cell was not equipped with railings for the disabled.

At some point on December 5, 2016, Warden Davis was making rounds, and he spoke to Sims in segregation. Sims informed Davis of his situation and told Davis that he could not be in this cell because of the lack of equipment to assist Sims when he tried to use the restroom. Davis did nothing.

Later that same day,[1] Sims attempted to use the restroom, his leg "gave out" and he fell and injured his lower back, hands, arms, and spine. Nurse Weatherford went to Sims' segregation cell to evaluate him after the fall. She found Sims sitting on the floor, and Sims told her that "when he went to transfer from the commode to his wheelchair his left leg gave way." Sims denied hitting his head. Instead, he "just landed really hard" and his spine was hurting. (Medical Records, Dkt. No. 18-2.) Nurse Weatherford noted no redness, swelling, broken skin, or bruising on Sims' back and that he was able to assist the correctional officers in returning Sims to his wheelchair. Nurse Weatherford noted that once in his chair Sims was tilting to the right. Sims stated that it felt better to sit that way. (*Id.*)

Dr. Wang is employed by the Virginia Department of Corrections (VDOC) as a physician at Green Rock. He has been employed by VDOC since 2007. (Affidavit of Dr. Laurence Wang ("Wang Aff.") ¶ 1, Dkt. No. 18-1.) Dr. Wang was notified of Sims' fall and knew that Nurse Weatherford had evaluated and assessed Sims' condition. Based on Nurse Weatherford's triage and report, Dr. Wang determined there was no need for him to see Sims at that time. During the weeks after Sims' fall, Dr. Wang was not aware of any complaint by Sims or request regarding injuries sustained from his fall. (*Id.* ¶ 5.)

A few hours after Sims' fall, at approximately 7:20 p.m. on December 5, 2016, Sims was assessed by Nurse Guy on the evening shift. Nurse Guy noted that Sims was standing on one leg

---

[1] Based on the documentary evidence presented by defendants, the court estimates that the fall occurred around 5:00 p.m. on December 5, 2016.

without difficulty. Sims rated his back pain at eight out of ten; however, Nurse Guy noted no signs of symptoms of difficulty or distress. (Medical Records.) At 5:05 a.m. the next morning, December 6, 2016, Sims refused his medications and refused to get out of bed. At 5:30 a.m. Nurse Horsely took Sims' vital signs, noted that he rated his pain at eight out of ten for his middle to lower back, and charted that he would continue to be monitored. (*Id.*) Later that evening at 7:25 p.m., Sims was seen again by Nurse Guy. Sims refused vital signs, did not complain of pain or discomfort, and showed no signs of symptoms of distress. (*Id.*)

On December 7, 2016, at 5:45 a.m., Nurse Harris saw Sims, who again refused vital signs and failed to voice any complaint of pain. Nurse Harris noted that Sims moved from the bed to the wheelchair with no difficulty. She charted that he would continue to be monitored. (*Id.*) Later that afternoon, Nurse Hobbs met with Sims regarding his prosthesis. Sims indicated that he wanted to have his leg sent from home. (*Id.*)

A later chart entry for January 5, 2017, reads: "No show for MD: Diet Needs/PT/Liver & Stomach issue/wants ultrasound of scrotum/wants new MRI." (*Id.*) Sims was seen by a nurse on January 17, 2017, and referred to Dr. Wang complaining of multiple issues. (*Id.*) Sims saw Dr. Wang the same day for the following complaints: an ear infection; bowel movement problems; abdominal pain; neck and back pain; history of neck problems (noting prior epidural injections); scrotal issue (noting prior ultrasound showing calcification); and history of liver disease (noting he cannot take Tylenol). (*Id.*)

Dr. Wang noted a history of C4-C5 radiculopathy and referred Sims for an outside neurologic spine consultation. (Wang Aff. ¶ 6.) Sims was seen by a spine center on February 3, 2017. He was diagnosed with chronic neck and back pain and prescribed anti-inflammatory medications and physical therapy. Sims went to physical therapy for an evaluation and treatment

on March 17, 2017.  The physical therapist ordered follow-up appointments two times per week for three weeks.  (Medical Records.)

**B.  Grievance Process**

Massenburg is a Human Rights Advocate at Green Rock.  In this capacity, she is responsible for maintaining grievance files on offenders at Green Rock.  (Affidavit of Sophia Massenburg ("Massenburg Aff.") ¶ 1, Dkt. No. 26-1.)  Operating Procedure (OP) 866.1, Offender Grievance Procedure, is a mechanism for offenders to resolve complaints, appeal administrative decisions, and challenge the substance of procedures.  The process provides corrections administrators a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner.  (*Id.* ¶ 4, Enclosure A.)  All issues can be grieved except those pertaining to policies, procedures, and decisions of the Virginia Parole Board, disciplinary hearings, State and Federal court decisions, laws and regulations, and matters beyond the control of the VDOC.  Each offender is entitled to use the grievance procedure for problem resolution. Reprisals are not imposed upon offenders for filing grievances in good faith.  (*Id.* ¶ 5.)

Grievances are to be submitted within thirty calendar days of the date of the incident. Prior to submitting a regular grievance, the offender must demonstrate that he has made a good faith effort to resolve his complaint informally.  This may be accomplished by submitting an informal complaint form to the appropriate department head.  Prison staff should respond to the offender's informal complaint within fifteen calendar days to ensure that the informal response is provided prior to the expiration of the thirty-day time period in which an offender may file his regular grievance. When filing his formal grievance, the offender must attach any required documentation to his attempt to resolve the issue in an informal manner.  Only one issue per

grievance form is addressed. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a lawsuit. (*Id.* ¶ 6.)

Those grievances that do not meet the filing requirements of OP 886.1 are returned to the offender within two working days from the date of receipt noting the reason for return on the intake section of the grievance form. Reasons include, but are not limited to, more than one issue per grievance, expired filing period, repetitive, and request for services. The offender is instructed how to remedy any problems with the grievance when feasible. A copy is made of all grievances returned to the offender with the justification for return noted on the second page of the grievance form. If an offender wishes review of the intake decision on any grievance, he may send the grievance to the Regional Ombudsman for a review. There is no further review of the intake decision. Appealing the intake decision does not satisfy the exhaustion requirement. (*Id.* ¶ 7.)

If a grievance is accepted during the intake process, there are three levels of review available for regular grievances. Level I reviews are conducted by the Warden or Superintendent of the prison. If the offender is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Deputy Director or Director of the VDOC conducts a review of the regular grievance. The time limit for issuing a Level I response is thirty days, twenty days for a Level II response, and twenty days for a Level III response. Expiration of the time limit without issuance of a response at any stage of the process automatically qualifies the grievance for appeal. (*Id.* ¶ 8.)

Sims submitted an informal complaint dated December 7, 2016. It was received in the grievance office on December 8, 2016, and the grievance office assigned tracking number GROC-16-INF-01951. Sims complained that he was placed in a cell on December 5 that had no "handicap equipment." Massenburg responded on December 8, 2016, advising Sims that he was on "grievance restriction" and had met his limit for submitting grievances and complaints for the week. A grievance restriction is imposed on offenders who have filed too many informal complaints, regular grievances, or other request forms that were found to be lacking merit and thus abusive of the grievance process. The restriction limits the number of complaints or grievances that an offender can submit for a temporary period of time. (*Id.* ¶ 11, Enclosure B.)

The grievance restriction was put into place because in the month of September 2016, Sims filed a total of fourteen informal complaints. Filing this number of informal complaints subjects the grievance office staff to additional work in responding to grievances. It also affects other offenders who have filed complaints because each complaint has to be assigned for staff review and investigation. If one offender files as many complaints and grievances as Sims filed, this impedes staff ability to respond adequately and timely to the 1,000 other offenders who may also have complaints to be investigated. The imposition of a restriction requires the offender to choose which issues are most important to him and file grievances or complaints on those issues. (*Id.* ¶ 12.)

An offender on restriction still has access to the grievance procedure. In Sims' case, he was restricted to filing one informal complaint, one regular grievance, and one emergency grievance per week for ninety days. (*Id.* ¶ 13.) When an offender is on restriction and files too many grievances or complaints in a given week—like Sims did—then he is free to re-submit his documents the next week. Sims could have re-submitted GROC-16-INF-01951 the following

week, but he did not.  (*Id.* ¶ 14.)  Sims did not submit any regular grievances or informal complaints the following week.  (*Id.* ¶ 15.)

Sims later submitted an informal complaint dated December 21, 2016.  It was received in the grievance office on December 22, 2016, and the grievance office assigned tracking number GROC-16-INF-02004.  Sims complained that he fell and was injured in a cell without handicap equipment and that he had not received medical treatment for injuries.  (*Id.* ¶ 16, Enclosure C.) Sims did not follow up by filing a regular grievance regarding his complaint that the cell was not properly equipped.  (*Id.* ¶ ¶ 17–18.)

Sims has also filed numerous informal complains about the grievance procedure at Green Rock.  He submitted an informal complaint dated May 1, 2017, complaining that he could not get complaint forms.  It was received in the grievance office on May 5, 2017, and the grievance office assigned tracking number GROC-17-INF-00576.  Massenburg responded on May 19, 2017, advising Sims that proper procedure is being followed and highlighted Section V, Informal Complaint Procedure, in her response.  (*Id.* ¶ 19, Enclosure D.)

Sims submitted an informal complaint dated June 21, 2017 complaining that Massenburg did not properly answer complaints.  It was received in the grievance office on June 26, 2017, and the grievance office assigned tracking number GROC-17-INF-00823.  Massenburg responded on July 11, 2017, advising Sims that it is not proper procedure to write an informal complaint about an informal complaint and suggested he review OP 866.1 to familiarize himself with all of the steps.  (*Id.* ¶ 20, Enclosure E.)

Sims submitted an informal complaint dated May 8, 2018, complaining that Massenburg hindered his ability to utilize the grievance procedure.  It was received in the grievance office on May 10, 2018, and the grievance office assigned tracking number GROC-18-INF-00568.

Massenburg responded on May 25, 2018, advising Sims that he has not been denied access to the grievance procedure. Massenburg noted in her response that in 2017, over thirty informal complaints and grievances had been logged for him, and that so far in 2018, more than ten had been processed, not including those rejected for not meeting intake criteria in 2017 and 2018. (*Id.* ¶ 21, Enclosure F.)

Sims submitted an informal complaint dated May 31, 2018, complaining that Massenburg failed to respond to a request from him for copies of his grievances. This informal complaint was received in the grievance office on June 1, 2018, and the grievance office assigned tracking number GROC-18-INF-00646. Massenburg responded on June 15, 2018, explaining the process for obtaining his grievances and asked that Sims be patient as the request would be processed as soon as possible. (*Id.* ¶ 22, Enclosure G.)

Sims submitted an informal complaint dated December 7, 2018, complaining that Massenburg was retaliating against him for exercising his rights under the Americans with Disabilities Act (ADA). It was received in the grievance office on December 11, 2018, and the grievance office assigned tracking number GROC-18-INF-01681. Massenburg responded on December 20, 2018, advising Sims that the proper procedure was being followed. She advised him that it is not proper procedure to write an informal complaint about an informal complaint. (*Id.* ¶ 23, Enclosure H.)

Sims submitted an informal complaint dated December 10, 2018, complaining that he was not receiving due process with the grievance procedure and that the institution was allowing the same person against whom he has made a complaint to respond to the complaint. It was assigned tracking number GROC-18-INF-01682. Massenburg responded on December 20, 2018, advising Sims that the proper procedure was being followed. (*Id.* ¶ 24, Enclosure I.)

Sims did not file a regular grievance about the grievance process.  (*Id.* ¶ 25.)  Sims and all offenders have access to OP 866.1 should they want to read the procedures.  (*Id.* ¶ 26.)

Massenburg's review of Sims' grievance history for the time period of December 1, 2016, to February 14, 2018, reflects that he filed a total of sixty six complaints, fifty four of which were informal complaints and twelve of which were regular grievances.  These complaints and grievances received staff responses.  (*Id.* ¶ 27.)  These numbers do not include grievances that were not accepted during the intake process because they did not meet the intake criteria. (*Id.* ¶ 28.)

## II.  DISCUSSION

### A.  Summary Judgment Standards

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c), 56(e).  All inferences must be viewed in a light most

favorable to the non-moving party, but the nonmovant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## B. Eighth Amendment Claim Against Dr. Wang

To establish an Eighth Amendment claim based on inadequate medical care, a plaintiff must show that: (1) he suffered from an objectively serious medical condition that was not "timely or properly treated" and (2) prison officials acted or did not act with deliberate indifference to the inmate's serious medical needs. *Peppers v. Moubarek*, Civil Action No. PWG-19-2346, 2020 WL 263491, at *5 (D. Md. Jan. 17, 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)). The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that the defendant knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775 F.3d at 178. The Supreme Court has said that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. In evaluating a prisoner's complaint regarding medical care, the court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Absent exceptional circumstances, an inmate's disagreement

with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Dr. Wang was aware of Sims' fall on December 5, 2016, but based on the nursing triage report, he determined that Sims was not in immediate need of medical attention. Over a month later in January 2017, Dr. Wang addressed Sims' complaints of neck and back pain by referring him to an outside consultation with a spine specialist, who evaluated Sims and prescribed anti-inflammatory medication and physical therapy. This is not deliberate indifference.

Sims' claim is based on his disagreement with Dr. Wang's decision to not treat him on the day of his fall. Sims notes that Dr. Wang was aware of his pre-existing neck and spine issues due to an accident where he was hit by a bus. Thus, Sims asserts that he was at risk of paralysis, especially because he complained of numbness in his arm and hand after the fall. At best, Sims' claim rests on his belief that Nurse Weatherford's assessment was incorrect, and by extension, Dr. Wang's initial medical judgment was also incorrect. Dr. Wang's reliance on a nursing assessment to inform the proper course of treatment does not demonstrate that he acted with deliberate indifference. *See, e.g.*, *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010) ("Although mandating a doctor's visit or constant prisoner checks would likely reduce the number of illness-related deaths or injuries, it is neither economically prudent nor feasible to put such policies in place."); *Adams v. Ingram*, No. 12-CV-162, 2015 WL 1256442, at *5 (S.D. Ill. Mar. 17, 2015) (the "common triage practice" of using nurses to screen complaints does not demonstrate deliberate indifference to their medical needs, as it "allows inmates to receive nurse-level treatment on demand but reserves higher level treatment for cases that nurses, in their medical judgment, believe require more medical expertise").

Moreover, as noted above, it is undisputed that Dr. Wang later referred Sims to a specialist. Delayed treatment can constitute deliberate indifference if Dr. Wang was "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 105. The delay, however, must be shown to have "exacerbated the injury or unnecessarily prolonged an inmate's pain." *Abraham v. McDonald*, 493 F. App'x 465, 466 (4th Cir. 2012) (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)); *see also Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008) ("An Eighth Amendment violation only occurs, however, if the delay results in some substantial harm to the patient."). In his response, Sims fails to create an issue of fact that the delay in referring him to a specialist for further treatment on his back caused substantial harm.[2]

The record shows that Sims' medical situation was not ignored. Sims was assessed by nurses in the immediate aftermath of the fall, who determined that Sims did not require immediate treatment for his injuries aside from further monitoring. Dr. Wang concurred with those assessments. Sims' disagreement with that course of treatment is not relevant and is not enough to prove deliberate indifference.

---

[2] The court also notes that at the end of his opposition brief, Sims writes: "I William T. Sims swear under the penalty of perjury that the above is true and correct to the best of my knowledge." (Dkt. No. 31 at 11.) This is an apparent attempt to comply with 28 U.S.C. § 1746, the applicable federal standard form for affirmations of unsworn declarations: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct." *Id.* The "to the best of my knowledge" formulation may be insufficient to comply with § 1746. *See America's Best Inns, Inc. v. Best Inns of Abilene, LP*, 980 F.2d 1072, 1074 (7th Cir. 1992). Rather, Sims must present any admissible evidence in opposition to Dr. Wang's motion for summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A) (providing that a "party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations"); *Iraheta v. Lam Yuen, LLC*, Civil Action No. CBD-12-1426, 2013 WL 6713219, at *2 (D. Md. Dec. 18, 2013) ("The totality of Defendants' attempt to satisfy the rule is the following statement, 'I declare under penalty of perjury under the laws of the United States of America that to the best of my knowledge the contents of the foregoing Motion are true and correct.' This is insufficient.").

## C. First and Fourteenth Amendment Claims Against Massenburg

Sims alleges that Massenburg purposefully hindered his ability to pursue administrative remedies in violation of the First and Fourteenth Amendments. Prisoners do not have a constitutional right to access or participate in grievance proceedings. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). There is "no liability under § 1983 for a prison administrator's response to a grievance or appeal," and "ruling against a prisoner on an administrative complaint does not cause or contribute to a constitutional violation." *Brown v. Va. Dep't of Corr.*, No. 6:07cv33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) (citing *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007)). Therefore, Massenburg is entitled to summary judgment. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017) ("An inmate . . . cannot bring a § 1983 claim alleging denial of a specific grievance process."). Moreover, the record shows Sims had access to the grievance procedure. The evidence set forth in Massenburg's affidavit demonstrates that Sims filed 54 informal complaints and 12 regular complaints in just over a year between December 1, 2016, and February 24, 2018. (Massenburg Aff. ¶ 27.)

## D. Eighth Amendment Claim Against Warden Davis

Sims alleges that Warden Davis violated his Eighth Amendment rights because Davis knew about Sims' placement in a segregation cell without railings but did nothing to help Sims before Sims fell and injured himself. To succeed on an Eighth Amendment conditions of confinement claim, Sims must establish that the inadequate conditions were "sufficiently serious" when measured by an objective standard, and the responsible prison officials had a "sufficiently culpable state of mind," that is, "deliberate indifference to inmate health or safety," when measured by a subjective standard. *Miller v. Clark*, No. 3:11-cv-00557, 2011 WL

6955512, at *2 (S.D.W. Va. Dec. 9, 2011) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The brief time where Sims was required to be in a cell not equipped for handicap access is not sufficiently serious to constitute cruel and unusual punishment.

Even if Sims could proceed past summary judgment on the merits of this claim, Davis is entitled to summary judgment for the separate reason that Sims failed to exhaust administrative remedies. The Prison Litigation Reform Act (PLRA) mandates that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions under Section 1983. 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA requires "proper exhaustion" of available remedies prior to filing suit. *Woodson v. Ngo*, 548 U.S. 81, 93–94 (2006). "[P]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91.

"An administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Thus, an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a

grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016).

Sims did not properly exhaust his claim against Davis. As discussed above, the grievance procedure at Green Rock requires an informal complaint, followed by a regular or formal grievance and then a three-level review process. While Sims filed two informal grievances regarding placement in the cell and his fall, one on December 7 (which was rejected due to his grievance restrictions) and another on December 21, Sims never filed a regular or formal grievance on this issue. Sims claims that Massenburg tried to cover up the incident by refusing to process his grievance, but, because there are no genuine disputes of material fact regarding alleged efforts to thwart Sims from exhausting his administrative remedies,[3] Davis is entitled to summary judgment.

## III. CONCLUSION

For the above-stated reasons, defendants' motions for summary judgment (Dkt. No. 17, 25) will be granted. The court will enter an appropriate order.

Entered: February 5, 2020.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

---

[3] Sims attached a letter to his brief which he claims serves as proof of his attempts to exhaust. (Dkt. No. 36-1.) This letter, written and signed by Sims, mirrors the allegations in his complaint and his argument that prison officials are attempting to cover up his fall and injury in segregation. This self-serving letter—which is unaddressed and undated—does not support Sims' assertion and does not create an issue of fact as to exhaustion.